UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

TOM DEROSIER and MICHEL BRYANT,

        Plaintiffs,

  v.

GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police; SGT. MICHAEL HARDMAN, in is official and personal capacities; and JOHN DOES 1 & 2 in their official capacities as Massachusetts State Police officers and in their personal capacities,

        Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT

TOM DEROSIER and MICHEL BRYANT (collectively, the Plaintiffs) are two journalists who were barred from engaging in journalism on public sidewalks, where news media traditionally gather, by members of the Massachusetts State Police.

Plaintiffs' primary concern is their violation of their Civil Rights under the First Amendment. GEOFFREY NOBLE is sued in his official capacity only as Superintendent of the Massachusetts State Police; Defendants SGT. MICHAEL HARDMAN and JOHN DOES 1 & 2 (Massachusetts State Police officers) are sued in their official and personal capacities. Plaintiffs bring claims under 42 U.S.C. § 1983 for Defendants' violation of Plaintiffs' First Amendment rights, and allege as follows:

### THE PARTIES

1. Plaintiff Tom Derosier is a natural person who resides in the Commonwealth of Massachusetts.

2. Plaintiff Michel Bryant is a natural person who resides in the State of Connecticut.

3. Defendant Geoffrey Nobel is the Superintendent of the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

4. Defendant Sgt. Michael Hardman is a Sergeant with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

5. Defendant John Doe 1 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

6. Defendant John Doe 2 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution.

8. This Court has personal jurisdiction over all defendants as they are all citizens or organs of the Commonwealth of Massachusetts, and the defendants committed the acts complained of within the said Commonwealth.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) as all defendants reside in this District and all events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### A. General Background

10. On or about January 29, 2022, John O'Keefe, a Boston Police Officer, died.

11. On or about June 9, 2022, a true bill was returned in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County, indicting Karen Read and charging her with a) second degree murder of O'Keefe per G.L. c. 265, § 1; b) killing

O'Keefe with her motor vehicle while intoxicated per G.L. c. 265, § 13 ½; and c) a hit-and-run death of O'Keefe under. G.L. c. 90, § 24,(2)(a ½)(2).

12. Judge Beverly Cannone is the presiding judge in the Read prosecution, in the case styled *Commonwealth v. Read,* Case No. 2282CR00017, in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County (hereinafter "*Read* Case").

13. A trial in the *Read* Case was held in 2024, which resulted in a mistrial after the jury failed to reach a unanimous decision (hereinafter "first trial").

14. A second trial in the *Read* Case began on April 1, 2025 (hereinafter "second trial").

15. Prior to the first trial, the Commonwealth filed a motion to *inter alia* create a "buffer zone" beyond the grounds of the Norfolk Superior Courthouse, to prohibit any individual from demonstrating in any manner about Read, law enforcement, the DA, potential witnesses, and evidence within 500 feet of the court complex during the trial.

16. Judge Cannone then issued an order granting the Commonwealth's motion, asserting that the Commonwealth's perceived inconveniences overcame everyone else's First Amendment rights, without regard for any differentiation between members of the public, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit A**.

17. Speech that does not qualify as a "demonstrat[ion]" was not restricted. Thus, a nearby café could advertise breakfast using a bullhorn and parade its menu on picket signs and

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

placards; Celtics and Bruins fans could similarly honor their teams by hooting/hollering and carrying placards. And in fact, commercial speech was permitted within the zone.

18. In advance of the second trial, the Commonwealth again moved for a buffer zone, but with a larger area (again, encompassing private property and traditional public fora, including public sidewalks and other areas). The Commonwealth also sought specific instructions to request police to use force to quash any dissent or protest. *See* **Exhibit B.**

19. Without an opportunity for affected persons to intervene or be heard, Judge Cannone issued an Order on March 25, 2025, granting the Commonwealth's motion, asserting that the basis for the first motion warranted a *larger* buffer zone for the second trial, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit C** (hereinafter "Second Prior Restraint Order").

20. Massachusetts State Police officers took action to enforce the buffer zone order during the first trial, and the Massachusetts State Police, under the control and direction of Defendant Noble, are acting to enforce the Second Prior Restraint Order.

**B.** **Unidentified State Police Officers Interfere with Bryant's Newsgathering**

21. Plaintiff Michel Bryant is a Host and Producer with Justice Served TV.

22. Bryant is an Executive Producer for *I Survived a Crime*, a production with Law and Crime Productions and The Legal Edge Network, LLC, airing on A&E Network and NETFLIX.

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

23. Bryant is an Executive Producer for CULT JUSTICE, airing on the Hulu Network.

24. On April 1, 2025, Bryant was walking on the sidewalk near the Dedham Courthouse, inside the "buffer zone," but he was not protesting, he was news gathering.

25. While doing so, he recorded a video through his phone titled "Arrest Threats by Mass Staties in #KarenRead Case."

26. A true and correct copy of the video appears at **Exhibit D**.

27. While he was newsgathering, he interviewed a Mr. John Delgado, ("Delgado").

28. Delgado was not protesting; he was, however, wearing a blue sticker that says, "Real Justice for John O'Keefe FKR."

29. While newsgathering in the "buffer zone," two unidentified Massachusetts State Police officers, Defendants John Does 1 & 2, approached Bryant and told him that he could not remain in the area, despite the fact that he was only newsgathering.

30. Doe 1 told Delgado, "That's gotta go" in reference to Delgado's sticker.

31. Doe 1 then violently ripped Delgado's sticker off his jacket.

32. Doe 1 then threatened Delgado "I don't want to see you walking by here again."

33. The aforesaid police encounter with Delgado appears as part of **Exhibit D**.

34. The said video streamed live from Bryant's phone to YouTube on or about 9:33 am EDT on April 1, 2025.

35. Bryant later uploaded this video of the interaction to his YouTube Channel, JSTV – Justice Served TV, on April 2, 2025, as part of his reporting, at https://www.youtube.com/watch?v=rI4M9y-6Xec.

36.     The video was part of the longer broadcast "Karen Read Trial: Jury Selection Begins! Michel LIVE at the Courthouse | Linda Breaks It All Down" at https://www.youtube.com/live/gnRtGAD4LSM.

37.     Bryant's YouTube channel has approximately 9,780 subscribers.

**C.    Sgt. Hardman Threatens Derosier and Interferes with his Newsgathering**

38.     Tom Derosier is the owner of media company, CPU Guys.

39.     Derosier is weekday live host of "Seeking Justice with Tom and Mike."

40.     On April 1, 2025, Derosier was present at outside the Dedham Superior Courthouse covering the Karen Read trial.

41.     At that time, Derosier was newsgathering and broadcasting as part of his show to the "Seeking Justice with Tom and Mike" YouTube channel, on a broadcast entitled "Jury Selection 4/1/25" at https://www.youtube.com/watch?v=PH2OoGMBxEQ .

42.     Derosier's YouTube channel has approximately 6,700 subscribers.

43.     Derosier carried no picket signs and otherwise bore no indicia of being a protestor.

44.     While Derosier was walking on the sidewalk, Sergeant Michael Hardman, a Massachusetts State Police officer (badge number 3121), verbally assaulted Derosier.

45.     First, Defendant Hardman asserted "*You don't have media credentials, you've got to go behind the buffer zone, ok, or you're going to be subject to arrest.  Go follow them, you're being told right now*."

46.     Derosier thereupon protested Hardman's unlawful order, asking "I'm not media?"

47.     Hardman responded and threatened, "No, you're not. Go back. Go back there. You're being subject to being arrested."

48.     Hardman asked if he could follow another individual into the public courthouse.

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

49. Hardman ordered again, "No, you can't."

50. At all relevant times, Hardman knew that Derosier was recording video and newsgathering, even acknowledging such during their interaction.

51. Derosier recorded video of the incident. *See* **Exhibit E**.

## CAUSE OF ACTION
### *Count I*
### Violation of the First Amendment to the United States Constitution
### Declaratory Judgment & Injunctive Relief
### (42 U.S.C. 1983 – First Amendment)
### (Against All Defendants)

52. Plaintiffs hereby repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

53. The Second Prior Restraint Order is facially unconstitutional. It is a content-based regulation of protected speech in a public forum that cannot withstand strict scrutiny. While the Supreme Court has upheld a statute relating to picketing or parading near courthouses, it has not approved of a 200-foot buffer with an additional larger, ill-defined area. *Contrast Cox v. Louisiana*, 379 U.S. 559 (1965). It is overinclusive—it includes speech in private businesses and homes and in traditional public fora. And, it is underinclusive, as it does not regulate other forms of speech directed at potential jurors (the ostensible "fair trial" reason given).

54. The Second Prior Restraint Order purports to address noise and to minimize prospective jurors' exposure to viewpoints about the Read case, but it is targeted solely to speech in the ambit of the Read case when Judge Cannone and the Superior Court routinely conduct jury trials without such restrictions.

55. Judge Cannone could have taken measures to reduce jurors' exposure to noise and public speech without imposing content-based restrictions.

RANDAZZA | LEGAL GROUP

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

56. Whatever interest Judge Cannone intended to advance, the Order contains no standards channeling officers' discretion toward that interest. Instead, the Act "vests unbridled discretion in a government official over whether to permit or deny expressive activity," *City of Lakewood*, 486 U.S. at 755, and its 200-foot sweep is far broader than necessary to accommodate any legitimate government interest.

57. On its face, the Order "restricts access to traditional public fora" and authorizes officers to regulate a sweeping volume of First Amendment activity, including Plaintiffs' otherwise lawful newsgathering. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

58. Criminalizing peaceful, nonobstructive newsgathering advances no legitimate interest. The state has no power to restrict reporting that is "not disruptive of public order or safety, and carried out by people who have a legal right to be in a particular public location and to watch and listen to what is going on around them." *Alvarez*, 679 F.3d at 606; *accord Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) (newsgathering in public "that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation").

59. The Order is not narrowly tailored. Its scope is untethered to whether a journalist's conduct "risk[s] substantial harm or if dispersal is otherwise necessary," *Bell v. Keating*, 697 F.3d 445, 459 (7th Cir. 2012), and the 200-foot bubble is far broader than necessary to protect any legitimate interest, *see Glik*, 655 F.3d at 80, 84 (individual "roughly ten feet away" is at "a comfortable remove" (citation omitted)).

60. The Order fails to leave open "alternative observation opportunities," *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017), when 200 feet is too great a distance for Plaintiffs to visually observe or capture audio of newsworthy events.

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

61. Even if the Order were construed as a content-neutral time, place, or manner restriction or a law that also targets conduct, it would remain overbroad.

62. The Order sweeps in an enormous breadth of protected speech and newsgathering that poses no risk of obstruction. *See Bell*, 697 F.3d at 456–57 (even where the "triggering conduct cannot be an act constituting protected expression," a statute "still implicate[s] protected expression" where, "once triggered, it may be applied to disperse people engaged in peaceful speech or expressive conduct").

63. The Second Prior Restraint Order is unconstitutionally vague. The Massachusetts State Police cannot ascertain what is and is not prohibited, such that they are prohibiting newsgathering activities by members of the public, including Plaintiffs.

64. The Order "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago*, 527 U.S. at 56. In both respects, the statute is unconstitutionally vague.

65. Because the Order allows officers to order an individual to withdraw for any reason (or for no reason), the Order provides no "warning about the behavior that [can] prompt[] a lawful dispersal order." *Bell*, 697 F.3d at 462.

66. The Order likewise fails to provide fair notice and an opportunity to comply because reporters cannot workably determine whether they are within the 200-foot bubble when gathering news at a crowded public event and the buffer zone is ill-described.

67. The Order is independently void for vagueness because the law "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

RANDAZZA | LEGAL GROUP

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

68. The Order contains no standards of any kind to guide law enforcement officers in deciding who should be ordered to withdraw.

69. In preventing newsgathering activities, the Second Prior Restraint Order is an unconstitutional prior restraint on speech.

70. The Second Prior Restraint Order is unconstitutional both facially and as applied. Defendants have been targeting people, like Plaintiffs, notwithstanding their First Amendment rights to gather news.

71. Plaintiffs desire to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

72. Plaintiffs have been injured, or reasonably fear imminent injury, by these constitutional violations, and Plaintiffs are entitled to relief.

73. Therefore, Plaintiffs are entitled to a declaration that the Second Prior Restraint Order is unconstitutional and they are entitled to an injunction against all Defendants prohibiting enforcement of the Second Prior Restraint Order.

### *Count II*
**Violation of the First Amendment to the United States Constitution: Retaliation**
**(42 U.S.C. 1983 – First Amendment)**
**(Bryant vs. Does 1 & 2)**

74. Plaintiff Michel Bryant hereby repeats and realleges each and every allegation in paragraphs 1-37 as if set forth fully herein.

75. The Doe Defendants' conduct of threatening Bryant on account of his April 1, 2025, constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

RANDAZZA | LEGAL GROUP

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

76.     The Doe Defendants' conduct of prohibiting Bryant from engaging, on April 1, 2025, in constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

77.     It is clearly established that there is a First Amendment right to engage in lawful newsgathering activities, which activities are not prohibited in the buffer zone.

78.     The Doe Defendants' restriction on Bryant's speech is content-based and is in violation of the Free Speech and Free Press Clauses of the First Amendment.

79.     Bryant desires to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

80.     Even a momentary deprivation of First Amendment rights is an irreparable injury.

81.     The violation of Bryant's First Amendment rights has caused him damage, including mental and emotional injury.

82.     Bryant has been injured, or reasonably fears imminent injury, by these constitutional violations, and Bryant is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

### *Count III*
### Violation of the First Amendment to the United States Constitution: Retaliation
### (42 U.S.C. 1983 – First Amendment)
### (Derosier vs. Hardman)

83.     Plaintiff Tom Derosier hereby repeats and realleges each and every allegation in paragraphs 1-20 & 38-52 as if set forth fully herein.

84.     Hardman's conduct of threatening Derosier on account of his April 1, 2025, constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

85. Hardman's conduct of prohibiting Derosier from engaging, on April 1, 2025, in constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

86. It is clearly established that there is a First Amendment right to engage in lawful newsgathering activities, which activities are not prohibited by the buffer zone.

87. Hardman's restriction on Derosier's speech is content-based and is in violation of the Free Speech and Free Press Clauses of the First Amendment.

88. Derosier desires to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

89. Even a momentary deprivation of First Amendment rights is an irreparable injury.

90. The violation of Derosier's First Amendment rights has caused him damage, including mental and emotional injury.

91. Derosier has been injured, or reasonably fear imminent injury, by these constitutional violations, and Derosier is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on each claim asserted or hereafter asserted in the Complaint, and on each defense asserted or hereafter asserted by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A. A declaration that the Second Prior Restraint Order is unconstitutional under the First Amendment.

B.  A declaration that enforcing the Second Prior Restraint Order is unconstitutional under the First Amendment.

C.  A preliminary and permanent injunction enjoining each Defendant from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression and activity, including (but especially) newsgathering activities, within Dedham, Massachusetts.

D.  To award Plaintiffs damages for the violation of their constitutional rights.

E.  To award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

F.  To award such other relief as this Honorable Court may deem just and proper.

Dated: April 3, 2025.                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark. Trammell
(*Pro Hac Vice* Forthcoming)
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs.*

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

## **VERIFICATION OF COMPLAINT**

I, Tom Derosier, am a Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 04 / 03 / 2025                              By: _____
                                                                    Tom Derosier

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02

## **VERIFICATION OF COMPLAINT**

I, Michel Bryant, am a Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 04 / 03 / 2025                    By: *Michel Bryant*
                                             Michel Bryant

RANDAZZA | LEGAL GROUP

Doc ID: 2eda23dff27af8326a96acf41414ba6d2ee09c02