## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOM DEROSIER and MICHEL BRYANT,<br><br>  Plaintiffs,<br><br>  v.<br><br>GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police; SGT. MICHAEL HARDMAN, in his official and personal capacities; and JOHN DOES 1 & 2 in their official capacities as Massachusetts State Police officers and in their personal capacities,<br><br>  Defendants. | Civil Action No. 1:25-cv-10812 |

### FIRST AMENDED COMPLAINT

TOM DEROSIER and MICHEL BRYANT (collectively, the Plaintiffs) are two journalists who were barred from engaging in journalism on public sidewalks, where news media traditionally gather, by members of the Massachusetts State Police.

Plaintiffs' primary concern is their violation of their Civil Rights under the First Amendment.  GEOFFREY NOBLE is sued in his official capacity only as Superintendent of the Massachusetts State Police; Defendants SGT. MICHAEL HARDMAN and JOHN DOES 1 & 2 (Massachusetts State Police officers) are sued in their official and personal capacities.  This Amended Complaint is brought because Hardman assaulted Mr. Derosier without cause.  Plaintiffs bring claims under 42 U.S.C. § 1983 for Defendants' violation of Plaintiffs' First and Fourteenth Amendment rights, and allege as follows:

### THE PARTIES

1.  Plaintiff Tom Derosier is a natural person who resides in the Commonwealth of Massachusetts.

2. Plaintiff Michel Bryant is a natural person who resides in the State of Connecticut.

3. Defendant Geoffrey Nobel is the Superintendent of the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

4. Defendant Sgt. Michael Hardman is a Sergeant with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

5. Defendant John Doe 1 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

6. Defendant John Doe 2 is an officer with the Massachusetts State Police and, at all relevant times, worked in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution.

8. This Court has personal jurisdiction over all defendants as they are all citizens or organs of the Commonwealth of Massachusetts, and the defendants committed the acts complained of within the said Commonwealth.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) as all defendants reside in this District and all events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

**1. General Background**

10. On or about January 29, 2022, John O'Keefe, a Boston Police Officer, died.

11. On or about June 9, 2022, a true bill was returned in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County, indicting Karen Read and charging her with a) second degree murder of O'Keefe per G.L. c. 265, § 1; b) killing

O'Keefe with her motor vehicle while intoxicated per G.L. c. 265, § 13 ½; and c) a hit-and-run death of O'Keefe under. G.L. c. 90, § 24,(2)(a ½)(2).

12. Judge Beverly Cannone is the presiding judge in the Read prosecution, in the case styled *Commonwealth v. Read,* Case No. 2282CR00017, in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Norfolk County (hereinafter "*Read* Case").

13. A trial in the *Read* Case was held in 2024, which resulted in a mistrial after the jury failed to reach a unanimous decision (hereinafter "first trial").

14. A second trial in the *Read* Case began on April 1, 2025 (hereinafter "second trial").

15. Prior to the first trial, the Commonwealth filed a motion to *inter alia* create a "buffer zone" beyond the grounds of the Norfolk Superior Courthouse, to prohibit any individual from demonstrating in any manner about Read, law enforcement, the DA, potential witnesses, and evidence within 500 feet of the court complex during the trial.

16. Judge Cannone then issued an order granting the Commonwealth's motion, asserting that the Commonwealth's perceived inconveniences overcame everyone else's First Amendment rights, without regard for any differentiation between members of the public, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court.  This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building.  Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit A**.

17. Speech that does not qualify as a "demonstrat[ion]" was not restricted.  Thus, a nearby café could advertise breakfast using a bullhorn and parade its menu on picket signs and

placards; Celtics and Bruins fans could similarly honor their teams by hooting/hollering and carrying placards. And in fact, commercial speech was permitted within the zone.

18. In advance of the second trial, the Commonwealth again moved for a buffer zone, but with a larger area (again, encompassing private property and traditional public fora, including public sidewalks and other areas). The Commonwealth also sought specific instructions to request police to use force to quash any dissent or protest. *See* **Exhibit B.**

19. Without an opportunity for affected persons to intervene or be heard, Judge Cannone issued an Order on March 25, 2025, granting the Commonwealth's motion, asserting that the basis for the first motion warranted a *larger* buffer zone for the second trial, and expressly ordered that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting." *See* **Exhibit C** (hereinafter "Second Prior Restraint Order").

20. Massachusetts State Police officers took action to enforce the buffer zone order during the first trial, and the Massachusetts State Police, under the control and direction of Defendant Noble, are acting to enforce the Second Prior Restraint Order.

21. On May 15, 2025, in the face of an adverse ruling by the First Circuit and multiple Federal court judges giving Judge Cannone the opportunity to make the buffer zone constitutionally palatable, she issued a Supplemental Order Regarding the Buffer Zone. *See* **Exhibit F** (hereinafter "Supplemental Order").

22. The Supplemental Order purported to only ensure that the pathways immediately around the courthouse were clear and only noisy protests and written materials intended to interfere with justice or influence witnesses, jurors, etc., were prohibited.

23. In no way does the Supplemental Order restrict newsgathering across the street from the courthouse.

**2.    Unidentified State Police Officers Interfere with Bryant's Newsgathering**

24. Plaintiff Michel Bryant is a Host and Producer with Justice Served TV.

25. Bryant is an Executive Producer for *I Survived a Crime*, a production with Law and Crime Productions and The Legal Edge Network, LLC, airing on A&E Network and NETFLIX.

26. Bryant is an Executive Producer for CULT JUSTICE, airing on the Hulu Network.

27. On April 1, 2025, Bryant was walking on the sidewalk near the Dedham Courthouse, inside the "buffer zone," but he was not protesting, he was news gathering.

28. While doing so, he recorded a video through his phone titled "Arrest Threats by Mass Staties in #KarenRead Case."

29. A true and correct copy of the video appears at **Exhibit D**.

30. While he was newsgathering, he interviewed a Mr. John Delgado, ("Delgado").

31. Delgado was not protesting; he was, however, wearing a blue sticker that says, "Real Justice for John O'Keefe FKR."

32. While newsgathering in the "buffer zone," two unidentified Massachusetts State Police officers, Defendants John Does 1 & 2, approached Bryant and told him that he could not remain in the area, despite the fact that he was only newsgathering.

33. Doe 1 told Delgado, "That's gotta go" in reference to Delgado's sticker.

34. Doe 1 then violently ripped Delgado's sticker off his jacket.

35. Doe 1 then threatened Delgado "I don't want to see you walking by here again."

36. The aforesaid police encounter with Delgado appears as part of **Exhibit D**.

37. The said video streamed live from Bryant's phone to YouTube on or about 9:33 am EDT on April 1, 2025.

38. Bryant later uploaded this video of the interaction to his YouTube Channel, JSTV – Justice Served TV, on April 2, 2025, as part of his reporting, at https://www.youtube.com/watch?v=rI4M9y-6Xec.

39. The video was part of the longer broadcast "Karen Read Trial: Jury Selection Begins! Michel LIVE at the Courthouse | Linda Breaks It All Down" at https://www.youtube.com/live/gnRtGAD4LSM.

40. Bryant's YouTube channel has approximately 9,780 subscribers.

**3. Sgt. Hardman Threatens and Assaults Derosier and Interferes with his Newsgathering**

**3.1. First Incident:**

41. Tom Derosier is the owner of media company, CPU Guys.

42. Derosier is weekday live host of "Seeking Justice with Tom and Mike."

43. On April 1, 2025, Derosier was present at outside the Dedham Superior Courthouse covering the Karen Read trial.

44. At that time, Derosier was newsgathering and broadcasting as part of his show to the "Seeking Justice with Tom and Mike" YouTube channel, on a broadcast entitled "Jury Selection 4/1/25" at https://www.youtube.com/watch?v=PH2OoGMBxEQ .

45. Derosier's YouTube channel has approximately 6,700 subscribers.

46. Derosier carried no picket signs and otherwise bore no indicia of being a protestor.

47. While Derosier was walking on the sidewalk, Sergeant Michael Hardman, a Massachusetts State Police officer (badge number 3121), verbally assaulted Derosier.

48. First, Defendant Hardman asserted "*You don't have media credentials, you've got to go behind the buffer zone, ok, or you're going to be subject to arrest. Go follow them, you're being told right now.*"

49. Derosier thereupon protested Hardman's unlawful order, asking "I'm not media?"

50. Hardman responded and threatened, "No, you're not. Go back. Go back there. You're being subject to being arrested."

51. Hardman asked if he could follow another individual into the public courthouse.

52. Hardman ordered again, "No, you can't."

53. At all relevant times, Hardman knew that Derosier was recording video and newsgathering, even acknowledging such during their interaction.

54. Derosier recorded video of the incident. *See* **Exhibit E**.

### 3.2. Second Incident:

55. On May 19, 2025, Derosier was broadcasting from within the buffer zone, on the southwest corner of High Street and Pearl Street, which is across the street from the Norfolk Superior Courthouse.

56. Such broadcast was published at https://www.youtube.com/watch?v=2EiEQfGvMtI to Derosier's approximately 14,200 subscribers and the public.

57. While Derosier was filming the exterior of the courthouse, Derosier was chatting with a state trooper about where Derosier could stand, and the trooper said "ok."

58. Thereupon, Hardman came up to Derosier, yelled "get back, get back across the street, I'm not telling you again" and violently grabbed Derosier's arm.

59. Hardman thereupon dragged Derosier across the street to the north side of High Street.

60. Derosier suffered pain in his arm from Derosier's assault.

61. An ambulance was dispatched and emergency medical technicians advised Derosier to seek further medical attention.

62. Derosier then sought such further medical attention as advised.

63. Derosier memorialized this incident in a sworn statement. *See* **Exhibit G**.

64. Hardman was thereafter heard to gloat to a colleague "that's how you do it," referring to his assault on Derosier. *See* **Exhibit H**.

## CAUSE OF ACTION
### *Count I*
**Violation of the First Amendment to the United States Constitution**
**Declaratory Judgment & Injunctive Relief**
**(42 U.S.C. 1983 – First Amendment)**
**(Against All Defendants)**

65. Plaintiffs hereby repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

66. The Second Prior Restraint Order is facially unconstitutional. It is a content-based regulation of protected speech in a public forum that cannot withstand strict scrutiny. While the Supreme Court has upheld a statute relating to picketing or parading near courthouses, it has not approved of a 200-foot buffer with an additional larger, ill-defined area. *Contrast Cox v. Louisiana*, 379 U.S. 559 (1965). It is overinclusive—it includes speech in private businesses and homes and in traditional public fora. And, it is underinclusive, as it does not regulate other forms of speech directed at potential jurors (the ostensible "fair trial" reason given).

67. The Second Prior Restraint Order purports to address noise and to minimize prospective jurors' exposure to viewpoints about the Read case, but it is targeted solely to speech in the ambit of the Read case when Judge Cannone and the Superior Court routinely conduct jury trials without such restrictions.

68. Judge Cannone could have taken measures to reduce jurors' exposure to noise and public speech without imposing content-based restrictions.

69. Whatever interest Judge Cannone intended to advance, the Order contains no standards channeling officers' discretion toward that interest. Instead, the Act "vests unbridled discretion in a government official over whether to permit or deny expressive activity," *City of Lakewood*, 486 U.S. at 755, and its 200-foot sweep is far broader than necessary to accommodate any legitimate government interest.

70. On its face, the Order "restricts access to traditional public fora" and authorizes officers to regulate a sweeping volume of First Amendment activity, including Plaintiffs' otherwise lawful newsgathering. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

71. Criminalizing peaceful, nonobstructive newsgathering advances no legitimate interest. The state has no power to restrict reporting that is "not disruptive of public order or safety, and carried out by people who have a legal right to be in a particular public location and to watch and listen to what is going on around them." *Alvarez*, 679 F.3d at 606; *accord Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) (newsgathering in public "that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation").

72. The Order is not narrowly tailored. Its scope is untethered to whether a journalist's conduct "risk[s] substantial harm or if dispersal is otherwise necessary," *Bell v. Keating*, 697 F.3d 445, 459 (7th Cir. 2012), and the 200-foot bubble is far broader than necessary to protect any legitimate interest, *see Glik*, 655 F.3d at 80, 84 (individual "roughly ten feet away" is at "a comfortable remove" (citation omitted)).

73. The Order fails to leave open "alternative observation opportunities," *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017), when 200 feet is too great a distance for Plaintiffs

to visually observe or capture audio of newsworthy events.

74. Even if the Order were construed as a content-neutral time, place, or manner restriction or a law that also targets conduct, it would remain overbroad.

75. The Order sweeps in an enormous breadth of protected speech and newsgathering that poses no risk of obstruction. *See Bell*, 697 F.3d at 456–57 (even where the "triggering conduct cannot be an act constituting protected expression," a statute "still implicate[s] protected expression" where, "once triggered, it may be applied to disperse people engaged in peaceful speech or expressive conduct").

76. The Second Prior Restraint Order is unconstitutionally vague. The Massachusetts State Police cannot ascertain what is and is not prohibited, such that they are prohibiting newsgathering activities by members of the public, including Plaintiffs.

77. The Order "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago*, 527 U.S. at 56. In both respects, the statute is unconstitutionally vague.

78. Because the Order allows officers to order an individual to withdraw for any reason (or for no reason), the Order provides no "warning about the behavior that [can] prompt[] a lawful dispersal order." *Bell*, 697 F.3d at 462.

79. The Order likewise fails to provide fair notice and an opportunity to comply because reporters cannot workably determine whether they are within the 200-foot bubble when gathering news at a crowded public event and the buffer zone is ill-described.

80. The Order is independently void for vagueness because the law "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*,

553 U.S. 285, 304 (2008).

81. The Order contains no standards of any kind to guide law enforcement officers in deciding who should be ordered to withdraw.

82. In preventing newsgathering activities, the Second Prior Restraint Order is an unconstitutional prior restraint on speech.

83. The Second Prior Restraint Order is unconstitutional both facially and as applied. Defendants have been targeting people, like Plaintiffs, notwithstanding their First Amendment rights to gather news.

84. Plaintiffs desire to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

85. Plaintiffs have been injured, or reasonably fear imminent injury, by these constitutional violations, and Plaintiffs are entitled to relief.

86. Therefore, Plaintiffs are entitled to a declaration that the Second Prior Restraint Order is unconstitutional and they are entitled to an injunction against all Defendants prohibiting enforcement of the Second Prior Restraint Order.

### *Count II*
**Violation of the First Amendment to the United States Constitution: Retaliation**
**(42 U.S.C. 1983 – First Amendment)**
**(Bryant vs. Does 1 & 2)**

87. Plaintiff Michel Bryant hereby repeats and realleges each and every allegation in paragraphs 1-37 as if set forth fully herein.

88. The Doe Defendants' conduct of threatening Bryant on account of his April 1, 2025, constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

89. The Doe Defendants' conduct of prohibiting Bryant from engaging, on April 1, 2025, in constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

90. It is clearly established that there is a First Amendment right to engage in lawful newsgathering activities, which activities are not prohibited in the buffer zone.

91. The Doe Defendants' restriction on Bryant's speech is content-based and is in violation of the Free Speech and Free Press Clauses of the First Amendment.

92. Bryant desires to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

93. Even a momentary deprivation of First Amendment rights is an irreparable injury.

94. The violation of Bryant's First Amendment rights has caused him damage, including mental and emotional injury.

95. Bryant has been injured, or reasonably fears imminent injury, by these constitutional violations, and Bryant is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

### *Count III*
### Violation of the First Amendment to the United States Constitution: Retaliation
### (42 U.S.C. 1983 – First Amendment)
### (Derosier vs. Hardman)

96. Plaintiff Tom Derosier hereby repeats and realleges each and every allegation in paragraphs 1-20 & 38-52 as if set forth fully herein.

97. Hardman's conduct of threatening Derosier on account of his April 1, 2025, constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

98. Hardman's conduct of prohibiting Derosier from engaging, on April 1, 2025, in constitutionally protected newsgathering activities is unconstitutional and violates his First Amendment right to freedom of speech and expression, and freedom of the press.

99. It is clearly established that there is a First Amendment right to engage in lawful newsgathering activities, which activities are not prohibited by the buffer zone.

100. Hardman's restriction on Derosier's speech is content-based and is in violation of the Free Speech and Free Press Clauses of the First Amendment.

101. Derosier desires to continue to engage in lawful newsgathering activities on the sidewalks near and/or abutting the Dedham Superior Courthouse.

102. Even a momentary deprivation of First Amendment rights is an irreparable injury.

103. The violation of Derosier's First Amendment rights has caused him damage, including mental and emotional injury.

104. Derosier has been injured, or reasonably fear imminent injury, by these constitutional violations, and Derosier is entitled to relief, including, but not limited to, compensatory damages and injunctive and declaratory relief.

### *Count IV*
**Violation of the Fourth Amendment to the United States Constitution: Unreasonable Force
(42 U.S.C. 1983 – Fourth Amendment)
(Derosier v. Hardman)**

105. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if set forth fully herein.

106. At all times relevant to this Complaint, Derosier had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable force by law enforcement officers such as Defendant Hardman.

107. Hardman unlawfully and unreasonably used force against Derosier on May 19, 2025, when he assaulted and battered him and dragged him across the street.

108. Such use of force was warrantless and without probable cause.

109. There were no governmental interests to warrant such intrusion on Derosier's interests; assuming, *arguendo*, Derosier was not permitted to conduct journalism from where he was, Derosier could have simply been given a reasonable opportunity to relocate.

110. Due to Hardman's unlawful conduct, Derosier is entitled to all allowable damages under law, including, but not limited to, physical and mental injury and emotional distress.

111. At all relevant times, Hardman acted willfully and in reckless disregard of Derosier's rights.

112. Derosier desires to continue to engage in journalism on the sidewalks near the Dedham Superior Courthouse.

113. Violating Derosier's Fourth Amendment rights proximately caused him damage.

114. Derosier has been injured, or reasonably fears imminent injury, by these constitutional violations, and Derosier is entitled to relief, including, but not limited to, compensatory and punitive damages, and injunctive and declaratory relief.

### *Count V*
### Violation of the Fourteenth Amendment to the United States Constitution
### (42 U.S.C. 1983 – Procedural Due Process)
### (Against All Defendants)

115. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

116. Defendants' conduct of issuing and enforcing the Second Prior Restraint Order, including the Supplemental Order, is unconstitutional and violates Plaintiffs' rights to due process of law under the Fourteenth Amendment.

117. Prior to being deprived of their right to speak freely and to assemble, Plaintiffs were entitled to due process.

118. There was no hearing, no opportunity to be heard, nor was there any due process whatsoever. There was merely an arbitrary and capricious action designed to harm Plaintiffs and others, issued by one person on account of anticipated First Amendment protected activity.

119. Judge Cannone's Second Prior Restraint Order was issued in the absence of statutory authority or inherent authority over persons not brought within her jurisdiction through process.

120. Judge Cannone's Second Prior Restraint Order was a usurpation of legislative and regulatory functions, not a judicial act.

121. Judge Cannone has no authority over what non-parties to a proceeding may do off courthouse property, let alone on private property or traditional public fora.

122. The Massachusetts Constitution does not empower Superior Court Justices with explicit or inherent authority to regulate private property or traditional public fora in the way they might regulate courthouse property, and the Federal Constitution prohibits depriving citizens of their liberties without any authorization or without due process.

123. No statute empowers Superior Court Justices with explicit or inherent authority to regulate private property or traditional public fora in the way they might regulate courthouse property.

124. No ordinance empowers Superior Court Justices with explicit or inherent authority to regulate private property or traditional public fora in the way they might regulate courthouse property.

125. Plaintiffs have been injured, and reasonably fear more imminent injury, by these constitutional violations, and Plaintiffs are entitled to relief.

126. Plaintiffs are entitled to a declaration that the Second Prior Restraint Order is unconstitutional and that they are entitled to an injunction on the Second Prior Restraint Order's enforcement.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on each claim asserted or hereafter asserted in the First Amended Complaint, and on each defense asserted or hereafter asserted by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. For a declaration that the Second Prior Restraint Order is unconstitutional under the First Amendment.

B. For a declaration that enforcing the Second Prior Restraint Order is unconstitutional under the First Amendment.

C. A preliminary and permanent injunction enjoining each Defendant from interfering with Plaintiffs' right to lawfully engage in constitutionally protected expression and activity, including (but especially) newsgathering activities, within Dedham, Massachusetts.

D. To award Plaintiffs actual, nominal, and punitive damages for the violation of their constitutional rights.

E. To award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

F. To award such other relief as this Honorable Court may deem just and proper.

Dated: May 19, 2025.	Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark Trammell
*Pro Hac Vice*
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, the foregoing document was served on all prior parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza